**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JESSE CROASMUN, ANTHONEY FRANKLIN, MARTIN HERTZFELD, KAMILLA ILISHAYEVA, MUSTAFA JAMEEL, MENONA MASSEI, KERI NAES, and MARC NICE, <br><br> Petitioners, <br><br> v. <br><br> ADTALEM GLOBAL EDUCATION, INC., <br><br> Respondent. | Case No. 20 C 1411 <br><br> Judge Joan H. Lefkow |

**OPINION AND ORDER**

Jesse Croasmun, Anthoney Franklin, Martin Hertzfeld, Kamilla Ilishayeva, Mustafa Jameel, Menona Massei, Keri Naes, and Marc Nice have filed a petition under the Federal Arbitration Act, 9 U.S.C §§ 1 *et seq*., against Adtalem Global Education, Inc. to compel arbitration of their claims in the JAMS dispute resolution forum according to a stipulation between petitioners and Adtalem. Adtalem moves to dismiss the petition for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Dkt. 13.) For the reasons set forth below, the court denies Adtalem's motion to dismiss but stays the case pending arbitration.

## BACKGROUND[1]

Adtalem, formerly known as DeVry Education Group, Inc. ("DeVry"), is a Delaware corporation and for-profit education company with its principal place of business in Illinois. (Dkt. 1 ¶ 18.) It owns and operates DeVry University, Inc. and DeVry/New York, Inc. (*Id.*)

Petitioners are eight students who paid for a DeVry education. (Dkt. 1, Exh. C.) To attend DeVry, each student signed an "Enrollment Agreement," which contained a mandatory arbitration clause. (*Id.*) The Enrollment Agreement specified, "Any claim or controversy arising out of or related to the [Enrollment] Agreement or the education provided by DeVry, regardless of form or cause of action shall be decided and determined by binding arbitration under the commercial rules of the American Arbitration Associat[ion]." (*Id.* ¶ 20.) From June through September 2017, each petitioner filed nearly identical claims against DeVry and its subsidiaries seeking $75,000 in compensatory and punitive damages for alleged consumer fraud, breach of contract, and negligence regarding DeVry's education programs. (Dkt. 1, Exh. C.)[2]

On March 27, 2018, petitioners' counsel, Stoltmann Law Offices (which apparently represents hundreds of claimants against DeVry) and Adtalem's general counsel entered an agreement which altered the arbitration forum in the Enrollment Agreement from the AAA to JAMS, required Adtalem to pay the AAA and JAMS fees, and restricted the parties' litigation

---

[1] The following recitation of facts is taken from the well-pleaded allegations in petitioners' complaint, which facts are presumed true for purposes of this motion. *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Sapperstein* v. *Hager,* 188 F.3d 852, 855 (7th Cir. 1999).

[2] All but two of the underlying complaints are attached as exhibits to the petition. Even if they claim less than $75,000, the court has supplemental jurisdiction over the claims because the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount in controversy requirement. *See Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ("[W]here the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount . . . .").

2

avenues and strategies, among other things. (Dkt. 1 ¶ 31.) The Stipulation provided in relevant part that:

> (1) The parties agree all [c]laimants represented by Stoltmann Law Offices will have their claims adjudicated through JAMS, with all hearings venued in Chicago and not with the AAA or in court;
>
> (2) Adtalem agrees to reimburse Stoltmann Law Offices the full amount of filing fees clients of Stoltmann Law Office have already paid to AAA within 30 days in the amount of $46,903;
>
> (3) Adtalem agrees not to take any action to force [c]laimants to litigate their claims in another forum, including but not limited to, any attempt to stay or enjoin arbitrations in court;
>
> (4) Claimants agree not to pursue any class action claims through JAMS or any other forum, including, but not limited, to court, or be grouped into one or several claims at JAMS or any other forum, including, but not limited, to court;
>
> (5) Adtalem agrees to pay any and all additional fees and expenses JAMS and the arbitrators may charge [c]laimants over the initial $250 filing fee the [c]laimants are obligated to pay at JAMS including, but not limited to, any JAMS case management fees and expenses and all professional charges and fees for the arbitrator's services in a timely manner as required by JAMS;
>
> (6) Both parties mutually agree the AAA Consumer Rules apply to each arbitration brought by [c]laimants that is administered by JAMS;

(Dkt. 1, Exh. B.)

As stipulated, petitioners submitted their claims to JAMS. (Dkt. 1 ¶ 33; dkt. 1, Exh. C.) Shortly thereafter, JAMS demanded payment for the filing fees from Adtalem in the amount of $1,250 per claim. (*Id.* ¶ 35.) Adtalem paid petitioners' counsel in full for the AAA filing fees but it refused to pay JAMS's filing fees. (*Id.* ¶ 33–34.)

Instead, on June 13, 2018, Adtalem repudiated the Stipulation in a letter to petitioners' counsel, detailing the following:

> You have stated that all 300 individuals that had their cases previously filed with the AAA want their cases to [] proceed promptly, and that you feel compelled to file their cases with JAMS. However, Adtalem did not agree to pay the filing fees

3

>for hundreds or even thousands of arbitration claims that may never be litigated or tried at a cost of hundreds of thousands of dollars. Indeed, it would cost the parties $450,000 in filing fees alone for the first 300 claims you intend **to** file. Moreover, it is unrealistic to think that either JAMS or the parties can feasibly simultaneously litigate and try hundreds or thousands of cases. **JAMS has indicated that it will accept the filing of your cases.** Adtalem proposes to pay its share of the filing fee for those cases that are actually going to being litigated and tried. If after the parties have litigated and tried a reasonable number of cases, the parties feel more cases should be tried, Adtalem will then pay the filing fees for those next cases. **Adtalem, however, will not pay the filing fees for cases that have no realistic chance of being litigated due to the constraints of the parties and of JAMS.**

(*Id.* ¶ 39.) (emphasis in source). On June 18, 2018, Adtalem doubled down on its repudiation in an email to petitioners' counsel, stating, "[T]he [S]tipulation does not support your position. Indeed, the issue remains the same: you have not identified a reasonable or practical way to proceed with 300-350 arbitrations simultaneously." (*Id.* ¶ 40.) Thereafter, on July 8, 2018, counsel for Adtalem communicated with JAMS, via email, that Adtalem will not pay the administrative filing fees for the arbitration until the pending lawsuit is resolved. (*Id.* ¶ 37.)

As a result of Adtalem's refusal to pay the filing fees to JAMS, no arbitrators have been appointed to the parties' JAMS disputes, and no hearings are set. (*Id.* ¶¶ 38, 41.) Petitioners argue that Adtalem's repudiation of the Stipulation through its letters and failure to timely pay the filing fees has manifested a clear intent to stop their claims from proceeding in arbitration. (*Id.* ¶ 43.) On February 26, 2020, petitioners filed the instant petition to compel Adtalem to arbitrate their dispute in JAMS. (Dkt. 1.)

The issues presented are whether the amount in controversy is more than $75,000 for each petitioner as required to establish diversity jurisdiction, whether the filing fee dispute is for this court or the arbitrator to decide, and whether the petitioners may proceed in this court as a group.

4

## ANALYSIS

### I.  Amount in Controversy

Adtalem contends that the amount in controversy for each petitioner is $1,250. (Dkt. 14 at 6.) Petitioners argue that the amount in controversy for jurisdictional purposes is the combined value of the disputed filing fee and each of the student's underlying claims.

To establish diversity jurisdiction, the plaintiffs and defendants must have complete diversity of citizenship, and the amount in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).[3] Where the amount in controversy is contested, the party invoking federal jurisdiction must demonstrate by a preponderance of the evidence that the amount is at least $75,000. *Meridian Sec. Ins. Co.* v. *Sadowski,* 441 F.3d 536, 540, 543 (7th Cir. 2006).

A district court asked to compel arbitration pursuant to section 4 of the FAA,[4] must determine whether, but for the arbitration agreement, it would have jurisdiction over the controversy. *See Vaden* v. *Discover Bank*, 556 U.S. 49, 53, 129 S. Ct. 1262 (2009) (treating federal question jurisdiction); *America's Moneyline* v. *Coleman*, 360 F.3d 782, 786 (7th Cir. 2004) ( "[I]n order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute.").

---

[3] The parties do not dispute the diversity of citizenship prong. Petitioners are citizens of Missouri, Ohio, Pennsylvania, and Texas; respondent is a citizen of Delaware and Illinois. Neither has respondent questioned the joinder of the petitioners under Fed. R. Civ. P. 19.

[4] Section 4 of the FAA provides:

> A party aggrieved by the alleged ... refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, which, save for such agreement, would have jurisdiction under Title 28, in a civil action ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Seemingly ignoring this settled law, Adtalem relies on *Caudle* v. *Am. Arbitration Ass'n*, 230 F.3d 920, 921 (7th Cir. 2000), where the plaintiff bought suit against the AAA, not to compel arbitration but for breach of a contract to provide arbitration services at a reasonable price, based on what the plaintiff believed was an excessive arbitration fee. Explaining that the plaintiff could not combine the stakes of his suit against the opposing party to the arbitration with the stakes of his suit against the AAA, the court ruled that the amount in controversy was "the amount in dispute *between the litigants*," *i.e.*, AAA's fee. *Id*. at 923 (emphasis in original). The present case is readily distinguishable. Petitioners seek to protect their underlying claims against Adtalem, which Adtalem accepts as valued at more than $75,000 per petitioner. Therefore, this matter falls within the court's subject matter jurisdiction.

## II.     Arbitration Filing Fees

Adtalem next argues that, even if petitioners have satisfied the amount in controversy, their petition must fail because the dispute over fees is for an arbitrator to decide. "In an action to compel arbitration, the function of the court is limited to determining whether there is an agreement to arbitrate the underlying dispute and, if so, whether the agreement to arbitrate has been breached." *Flender Corp.* v. *Techna-Quip Co.*, 953 F.2d 273, 277 (N.D. Ill. 1992). Petitioners characterize Adtalem's conduct as a breach of the agreement to arbitrate, thus properly for the court to decide.

"Challenges that are not directly aimed at the agreement to arbitrate are referable to an arbitrator." *Id*. Likewise, "procedural questions which grow out of the dispute and bear on its final disposition" are for the arbitrator and not the court. *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002) (internal quotation marks and citation omitted).

6

Adtalem points to a hearing transcript, dated January 9, 2020, from the *Cowans* v. *Adtalem Global Education, Inc.* matter in the Circuit Court of Cook County, Chancery Division. (Dkt. 14, Exh. 2.) In *Cowans*, the court granted Adtalem's motion to dismiss a former DeVry student's petition to compel arbitration because it did not think it proper to weigh in on a fee that was clearly confined to the costs and fees associated with arbitration. (*Id.* at 21.) In *McClenon* v. *Postmates*, a case in this court similar to the pending petition, a group of couriers sought to compel arbitration where Postmates refused to pay fees per their arbitration agreements. No. 19 C 6415, 2020 WL 4053472, at * 1 (N.D. Ill. July 20, 2020). The court granted petitioners' motion to compel arbitration but declined to analyze the fee issue, deciding that fee disputes were properly within the arbitrator's purview. *Id.* at *7.

Adtalem also points to AAA Rule 54 (the parties agree that AAA Rules govern) to show that disputes over fees fall within the purview of the arbitrator or the AAA. R-54(b) of AAA's Consumer Rules, which contemplates non-payment of fees, states that "[o]nce the AAA informs the parties that payments have not been received, a party may request an order from the arbitrator directing what measures might be taken in light of a party's nonpayment." R-54(b).

Like other courts addressing the issue, this court concludes that the dispute over JAMS's filing fees is for the arbitrator to decide.[5] Petitioners assert that Adtalem's refusal to pay the filing fees blocks the door to the arbitrator and thus is a breach of the agreement to arbitrate. So far, there is no indication that JAMS will not resolve the fees issue if asked. If, however, JAMS

---

[5] The Stipulation states, in pertinent part, that "DeVry agrees to pay any and all additional fees and expenses JAMS and the arbitrators may charge [c]laimants over the initial $250 filing fee the [c]laimants are obligated to pay at JAMS including, but not limited to, any JAMS case management fees and expenses and all professional charges and fees for the arbitrator's services in a timely manner as required by JAMS." (Dkt. 1, Exh. B.)

7

declines to take jurisdiction without payment of its fees, petitioners should not face checkmate. Rather, the parties may return to this court for resolution of the meaning of the Stipulation.

### III. Grouped Claims

Finally, Adtalem argues that the petition should be dismissed because the Stipulation bars grouped claims. The Stipulation provides, "Claimants agree not to pursue any class action claims through JAMS or any other forum, including, but not limited, to court, or be grouped into one or several claims at JAMS or any other forum, including, but not limited, to court." (Dkt. 1, Exh. B at ¶ 4.) Petitioners oppose Adtalem's motion to dismiss, arguing that it is circular and unsupported by precedent.

Adtalem cites no authority or cogent argument for its position, and its position fails to address the more germane question of whether joinder is proper under Federal Rule of Civil Procedure 19. Nonetheless, the argument is forfeited. *See Beverly* v. *Abbott Labs.*, 817 F.3d 328, 334 (7th Cir. 2016) ("[F]ail[ure] to cite a single case . . . amounts to forfeiture.")

### CONCLUSION

For the foregoing reasons, the court concludes that it has jurisdiction over the subject matter. Adtalem's motion to dismiss is denied. Petitioners' motion to compel arbitration is granted. The action is stayed pursuant to 9 U.S.C. § 3. The parties are to file a joint status report once the petitioners' claims have been decided by JAMS and the time to move for enforcement of the awards has expired.

Date: November 30, 2020

_____
U.S. District Judge Joan H. Lefkow